UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Tyquan Jared Amir Jones, #320934, | ) | C/A No. 5:15-cv-02306-JMC-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| | ) | |
| Joseph McFadden, | ) | |
| | ) | |
| Respondent. | ) | |

Tyquan Jared Amir Jones ("Petitioner"), a state prisoner, filed this pro se Petition for
Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to
28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and
Recommendation ("Report") on Respondent's Motion for Summary Judgment and Return. ECF
Nos. 26, 27. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised
Petitioner of the summary judgment and dismissal procedures and the possible consequences if
he failed to respond adequately to Respondent's Motion. ECF No. 28. Petitioner filed a Response
in opposition to Respondent's Motion. ECF No. 31. Respondent did not file a reply to
Petitioner's Response. Having carefully considered the parties' submissions and the record in
this case, the undersigned recommends that Respondent's Motion for Summary Judgment be
granted.

I.      Procedural History

Petitioner is currently incarcerated at Kershaw Correctional Institution, part of the South
Carolina Department of Corrections prison system. ECF No. 17. At the time he filed his Petition,

Petitioner was incarcerated at Lieber Correctional Institution. Respondent is the Warden at Lieber. ECF No. 1 at 1. Petitioner, who was fifteen-years old at the time of his arrest, was charged in Florence County Family Court with murder, armed robbery, and unlawful possession of a pistol based on facts surrounding an incident that occurred on December 3, 2005. App. 6, 307-09.[1] On December 14, 2005, the State of South Carolina filed a motion to waive Family Court jurisdiction over Petitioner's charges to General Sessions Court so that Petitioner could be tried as an adult. A hearing on that motion was held before Honorable Judge Jerry D. Vinson ("Family Court Judge") in Florence County Family Court on July 13-14, 2006. App. 6, 1-288. Petitioner was represented at the waiver hearing by Attorney C. Stevens McLaurin ("plea counsel") and the State was represented by Attorney Stephen Hill. App. 1. The Family Court Judge granted the State's motion, App. 287, and, on September 7, 2006, a Florence County Grand Jury indicted Petitioner on one count of murder, one count of attempted armed robbery, and one count of conspiracy. App. 376-77; *State v. Jones*, No. 2006-FA-21-1257. On March 15, 2007, Petitioner, represented by plea counsel, appeared in Florence County General Sessions Court before Honorable Judge Thomas A. Russo ("plea judge") to enter a guilty plea to voluntary manslaughter, a lesser included offense of the pending murder charge. App. 290, 299. The State was represented at the plea hearing by Attorney Jack W. Lawson, Jr., who informed the plea judge that the State had agreed to the plea and recommended "a 20-year cap" on the sentence. App. 297-98. Upon questioning by the plea judge, Petitioner admitted his understanding of the charge he was pleading to -- including the fact that the other two pending

---

[1] Citations to "App." refer to the appendix of the record that was before the PCR court. It is on the docket of this case at ECF Nos. 27-1, 27-2.

charges would be dismissed under the plea -- and of the potential sentence he could receive upon conviction. App. 300. Petitioner told the plea judge that he was sixteen-years old, that he understood the trial-related rights he was giving up by pleading guilty, that he was satisfied with plea counsel's representation, and that no one had promised him anything or "held out any hope of reward or threatened" him "to get [him] to plead guilty." App. 300-05. Petitioner also told the plea judge that all of his answers had been his answers, that they were truthful and made of his own free will, and that he was guilty of the manslaughter charge to which he was pleading guilty. App. 306. After hearing from the State regarding the facts of the underlying charges, the plea judge accepted Petitioner's guilty plea. App. 310. Following additional argument from plea counsel and testimony from Petitioner and the victim's father, App. 310-19, the plea court imposed a 20-year sentence on the voluntary manslaughter conviction. App. 325.

Petitioner filed a timely direct appeal in which he was represented by Attorney M. Celia Robinson ("appellate counsel"), an appellate defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. Appellate counsel raised the following points on appeal:

> 1. Did the family court judge err and abuse his discretion in waiving the family court's jurisdiction over to the court of general sessions so that this fifteen-year-old could be charged as an adult where the judge did not apply the Kent criteria fairly or as intended?

> 2. Did the family court judge err in failing to suppress the statement given by appellant where the statement was not given voluntarily but resulted from the unchaperoned, teenager's will being overborne and his being induced to cooperate and to make a statement by the officers' promise to speak to the court on his behalf and in favor of lenient treatment?

ECF No. 27-2 at 3. Following receipt of Petitioner's final brief and the State's final brief, ECF No. 27-3, the Court of Appeals issued a published order affirming the waiver of jurisdiction to the General Sessions Court and finding that his point relating to the admissibility of his statement to police was not preserved or abandoned. ECF No. 27-4; *State v. Jones*, 709 S.E.2d 696 (S.C. Ct. App. 2011). The remittitur was sent to the Florence County Clerk of Court on May 6, 2011. ECF No. 27-5. Petitioner filed a post-conviction relief ("PCR") application on September 28, 2011, raising the following grounds for relief:

(a) Involuntary Character of confession;

(b) Involuntary Guilty Plea;

(c) Ineffective Assistance of Counsel.

App. 329; *Jones v. State*, No. 2012-CP-39-0081. After the State filed its Return to the PCR application, App. 334-38, an evidentiary hearing was held on February 1, 2012 in Florence, South Carolina before the Honorable Judge William H. Seals ("the PCR court"). Attorney Charles T. Brooks, III ("PCR counsel") represented Petitioner and Assistant Attorney General David Spencer represented the State at the hearing. App. 339. Petitioner and plea counsel testified at the hearing. App. 342-55, 356-65.

Petitioner testified that he pleaded guilty because plea counsel advised him to do so because of an inculpatory statement that Petitioner gave to Florence County law enforcement officers when he was being questioned about the murder with which he was ultimately charged ("the statement"). App. 344. Petitioner stated that the statement "was involuntary . . ." because one of the police officers who questioned him before he gave the statement ("Lieutenant Swaggard") gave testimony at the waiver hearing showing that he made promises of doing

4

"whatever he can for [Petitioner] and all this kind of stuff" to get Petitioner to give the statement. App. 345. Petitioner said that even though the family court judge had already ruled the statement admissible at the conclusion of a *Jackson v. Denno* hearing,[2] plea counsel should have objected and moved to suppress the statement again based on Lieutenant Swaggard's use of promises of "leniency or whatever" to induce the statement when the officer testified during the waiver hearing.[3] App. 345-46. Petitioner testified that plea counsel's discussion of a "15 or 20 years"

---

[2] In *Jackson v. Denno*, 378 U.S. 368, 376-78 (1964), the United States Supreme Court held that a criminal defendant has a constitutional due-process right to litigate, at some stage of his criminal trial, whether his pretrial statement to law enforcement, sought to be introduced against him by the prosecution, had been voluntarily rendered and to have a fair hearing and reliable determination on that issue uninfluenced by the truth or falsity of the statement itself. The family court judge conducted a *Jackson v. Denno* hearing during the waiver hearing when one of the State's law-enforcement witnesses, Investigator Robinson, began to discuss the statement in her hearing testimony. The basis for plea counsel's suppression argument was that Petitioner's mother had not been physically present in the same room where Petitioner gave the statement. Plea counsel did not argue that the statement was unconstitutionally induced by promises from police interrogators. App. 144-54.

[3] Lieutenant Swaggard, an investigator with the City of Florence Police Department, testified about his participation in the interrogation that led to the statement. His relevant testimony, given on direct and re-direct examination by the State's counsel, was:

Q    Okay. What if anything, did you hear Mr. Jones say about this willingness to participate?

A    During the interview, with Mr. Jones, he initially, did not want to say much of anything at all. When his mother, grandmother and some aunts arrived. And he knew that they were there. That's when he came to a realization that he needed to cooperate with us. Based on what they were telling him, That we were gonna be as straight-up with him as we could with him. And treat him with, you know, as much dignity and understanding that we could given the circumstances. And under the law, what we could do for him. We would do. If he cooperated with us. And he did cooperate with us. He lead us to where the gun was. And he told us

5

sentence at the waiver hearing showed that counsel "had his mind made up already." App. 346. On cross examination by the State, Petitioner stated that he pleaded guilty because plea counsel was worried that the statement would be admitted in a trial and that he would be convicted on the murder charge. Petitioner acknowledged that he would have been facing a sentence of "30 years to life" had he been convicted. App. 347. Petitioner also said that he understood that even though the plea agreement capped his sentence at twenty years, the plea judge could have sentenced him to less time than the twenty years. App. 347-48. Petitioner said that because he was sixteen-years old at the time, he took plea counsel's advice to plead because he did not "know nothing about

---

> what other people did. And the only conversation we had at the point was, you know, what his responsibility was. He knew that he messed up. There was some discussion about this being a drug deal going bad, yesterday. But this was a robbery that went bad. They planned a robbery and executed robbery. In fact, he had access to the gun before he went to DJJ. Spent a couple of months there. Came back. Got the gun from one of the codefendants. And went out with them to do the robbery.

App. 186-87.

Q.    To your knowledge, was he threatened by anyone in this case?

A.    Not to my knowledge. I can't think of anybody who threatened him.

Q.    To your knowledge, was he promised anything if he participated in this case?

A.    The only promise that anybody ever made to him was that we would talk to, you know, members of the Court. Members of the Solicitor's Office, whomever. He was cooperative, you know. Did what he did to take responsibility.

App. 206-07. Plea counsel did not object to this testimony and did not bring up this topic during his cross or re-cross examination of Lieutenant Swaggard. App. 193-203, 208-09.

no law so [he] was listening to him." App. 348. Petitioner said that he knew plea counsel could

not guarantee him that the statement would get suppressed, but he said that "it was a likelihood

that it would have got suppressed at the waiver hearing . . . " if counsel had relied on the officer's

testimony about the promises he made. Petitioner testified that the officer did not promise to

dismiss the charges against him, but that he made "an implied promise of leniency." App. 349.

Petitioner stated that he pleaded guilty because of his involuntary statement and that he "was

what you could say coerced." App. 351. Petitioner refused to say that his statements during the

plea hearing were truthful. Instead, he stated that he "just did what [he] thought was in [his] best

interest as far as my attorney advice." App. 352. Petitioner said "I guess so," when the State's

counsel asked him if he had lied to the plea judge and denied that he shot the victim. Petitioner

said that he answered the plea judge's questions as he did because he thought "[i]t was all the

process of me pleading guilty." He said that he "didn't know any different." App. 354. When

asked whether several of his answers during the plea hearing were lies, Petitioner responded "I

said it. It's on the transcript." Petitioner also said that he understood "the difference between the

truth and a lie." App. 355.

Plea counsel testified that "a lot" of his representation of Petitioner "dealt with the

statement." App. 357. He stated that Petitioner's family background and prior juvenile record at

the time of the waiver hearing presented both positive and negative factors to be faced in his

representation during the contested proceeding. App. 357-58. With respect to the guilty plea that

was entered after jurisdiction was waived to General Sessions Court, plea counsel testified that

he, Petitioner, and Petitioner's mother "talked about different options." He also stated that he

spoke to Petitioner's father. Plea counsel stated that he believed that the admission of the

statement after the *Jackson v. Denno* hearing, coupled with "the co-defendant's evidence," lessened the likelihood of a successful outcome at trial and "we made an informed decision to try to plead." App. 358-59. Plea counsel testified that he did not move to suppress the statement in the General Sessions Court after Petitioner was indicted as an adult, and that Petitioner's co-defendants had given statements saying that Petitioner "was the shooter." App. 359. Plea counsel could not remember the exact details of Petitioner's co-defendants' statements, but he did state that they could have been subjected to cross examination at a trial. He also said that the "totality of the circumstances" convinced him that his best advice was for Petitioner to "work out a plea . . . ." App. 360. On cross examination by PCR counsel, plea counsel stated that he did not remember whether he questioned Lieutenant Swaggard during the *Jackson v. Denno* hearing, but he did remember questioning him at some time during the family court waiver proceeding. He said that Lieutenant Swaggard "did indicate that to us that he would try to help [Petitioner] out." App. 360. Plea counsel testified that he did not believe that Lieutenant Swaggard induced Petitioner to give the statement because "he just said he'd try to help him out." App. 361. Plea counsel testified that he did not remember whether he objected to Lieutenant Swaggard's testimony about the statement during the waiver hearing, but would rely on what the transcript showed. App. 362; *see supra* note 3 (plea counsel did not object to the testimony).

Following the hearing, the PCR court issued an order of dismissal dated November 25, 2013, containing the following findings of fact and conclusions of law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the

8

hearing and to closely pass upon their credibility. This Court has weighed the testimony accordingly.

Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (1985).

### Ineffective Assistance of Counsel and Involuntary Plea

Applicant makes various allegations of ineffective assistance of counsel. The burden of proof is on the applicant in a PCR proceeding to prove the allegations in his application. Bell v. State, 321 S.C. 238, 467 S.E.2d 926 (1996); Rule 71.1(e), SCRCP.

For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984); Judge v. State, 321 S.C. 554, 471 S.E.2d 146 (1996). In order to prove prejudice, an applicant must show that but for counsel's errors, there is a reasonable probability the result at trial would have been different. Johnson v. State, 325 S.C.182, 480 S.E.2d 733 (1997). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Id. Where trial counsel articulates a valid reason for employing certain trial strategy, such conduct should not be deemed ineffective assistance of counsel. Roseboro v. State, 317 S.C. 292, 454 S.E.2d 312 (1995); Stokes v. State, 308 S.C. 546, 4l9 S.E.2d 778 (1992). With respect to guilty plea counsel, the Applicant must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); Stalk v. State, 383 S.C. 559, 681 S.E.2d 592 (2009); Roscoe v. State, 345 S.C.16, 546 S.E.2d 417 (2001).

To be knowing and voluntary, a plea must be entered with a full understanding of the charges and the consequences of the plea. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L.Ed.2d 274 (1969); Dover v. State, 304 S.C. 433, 405 S.E.2d 391 (1991). In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence at the PCR hearing. Harris v. Leeke, 282 S.C. 331, 318 S.E.2d 360 (1984).

Applicant testified that he felt his statement to law enforcement was involuntarily given and further that he pled guilty because of this statement. Applicant's charges stem from the shooting of the victim during the course of an armed robbery. Applicant gave a statement to police admitting that he utilized a

gun in the armed robbery and claimed the gun went off accidently. Other co-defendants gave statements to the police that were inculpatory to Applicant. At the waiver hearing, counsel challenged Applicant's statement, but the family court found the statement admissible. Counsel testified he would have challenged the statement if the case went to trial, but that the statement would likely come in. Counsel further testified that he would have challenged the co-defendants' testimony for inconsistencies. However, counsel testified that conviction was likely if the case went to trial. Counsel testified that he informed Applicant of his options and that Applicant made an informed decision to take the plea offer, a recommendation of a twenty year cap for a plea to voluntary manslaughter, rather than face trial for murder.

The plea transcript supports the voluntariness of the plea. Applicant was informed of his constitutional rights, including the right to trial, the right to remain silent, and the right to confront his accusers. Tr. pp. 3-4, p. 1 4. Applicant advised the plea court that counsel did everything he could to assist Applicant with his case, that Applicant was not promised or threatened anything in pleading guilty, and that he was pleading guilty of his own freewill. Applicant told the plea court that his answers were truthful and that he was guilty of the charge. Tr. pp. 16-17. He further advised the plea court that he agreed with the State's recitation of facts. Tr. p. 21, lines 3-6.

This Court finds that counsel's performance was well within professional norms and that he did not render deficient performance. The transcripts reflect that counsel was vigorous in his representation and his testimony reflects that he ensured Applicant made an intelligent and knowing decision to plead guilty. This Court finds counsel's testimony credible and gives it great weight. On the other hand, this Court does not find Applicant's testimony credible. This Court further finds that Applicant has not met his burden of proving prejudice, as this Court finds Applicant failed to show a likelihood that his statement to police would have been suppressed had he gone to trial. This Court finds that Applicant's plea was voluntarily given and further finds that the PCR application must be denied.

### CONCLUSION

Based on the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this Application for Post-Conviction Relief must be denied and dismissed with prejudice.

App. 371-74. A *Johnson* petition for writ of certiorari seeking review of the PCR court's final

judgment was submitted on Petitioner's behalf to the South Carolina Supreme Court on February

10

27, 2013. ECF No. 27-6; *Jones v. State*, No. 2012-212303 (S.C.).[4] Appellate Defender David Alexander ("PCR appellate counsel") raised the following issue for the court's review quoted verbatim: "Whether plea counsel rendered ineffective assistance in derogation of the Sixth Amendment by allowing petitioner to plead guilty when petitioner's incriminating statement made to the police when he was a juvenile would have been suppressed." ECF No. 27-7 at 3. With authorization from the appellate court, ECF No. 27-8, Petitioner submitted a pro se supplemental brief raising the following issue for review quoted verbatim: "Whether waiver hearing counsel rendered ineffective assistance in derogation of the Sixth Amendment by failing to object to, or move to get evidence suppressed, when police officers testimony contained admissions of certain facts surrounding a violation of inalienable constitutional rights." ECF No. 27-9 at 3. Petitioner amended his pro se brief and stated his issue for review as: "Whether counsel rendered ineffective assistance in derogation of the Sixth Amendment for his failure to make use of hearing testimony on cross examination when testimony was crucial evidence to prove inadmissibility of state evidence." *Id.* at 10. The matter was transferred to the South Carolina Court of Appeals for consideration, and that court issued an order on November 21, 2014, denying the petition for certiorari without written analysis of the points raised for review upon a finding that the petition was without merit and relieving PCR appellate counsel from representation. ECF No. 27-10. The remittitur was issued on December 9, 2014. ECF No. 27-11. On December 1, 2014, Petitioner filed a second PCR action and alleged: "General Sessions

---

[4] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), addressing the procedures for counsel to follow when filing what they perceive to be meritless appeals in state PCR cases pursuant to *Anders v. California* and requesting to be relieved from representation.

Court lack of Subject Matter Jurisdiction." ECF No. 27-12; *Jones v. State*, No. 2014-CP-3370. A Conditional Order of Dismissal was entered on July 16, 2015, finding the action time-barred, improperly successive, and without merit. Petitioner was granted twenty (20) days from the date of service to show cause as to why the dismissal should not become final. ECF No. 27-14 at 7. The online records of the Florence County Clerk of Court show that Petitioner did not file anything in the case after entry of the Conditional Order of Dismissal within the allowed twenty days and there is no indication that Petitioner attempted to appeal the order to any South Carolina appellate court. *See* http://publicindex.sccourts.org/Florence/PublicIndex/CaseDetails (last consulted March 7, 2016). Petitioner has not attempted to state any additional Grounds for federal habeas relief based on the claim he raised in his second PCR application, thus it has no impact on this Report.

     II.     Discussion

          A.     Federal Habeas Issue

Petitioner raises the following issue in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> **Ground One**: Ineffective Assistance of Counsel
>
>     . . . .
>
> Counsel failed to pursue defenses available to defendant; Counsel failed to use important testimony at Family Court waiver hearing (Memorandum will be submitted.)

ECF No. 1 at 5.

          B.     Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.     Habeas Corpus Standard of Review

13

1.    Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

a.    Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*.

In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

15

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.    Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 563 U.S. at 190.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of

16

counsel. *Id*. at 179. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id*. at 180. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 563 U.S. at 181. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." *Id*. at 182 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id*. (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." 562 U.S. at 101.

### 2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate, but related, theories of exhaustion and procedural bypass operate in a

17

similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –
>
>   (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>   (B)(i) there is an absence of available State corrective process; or
>
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v.*

*Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing a PCR application. State law requires that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

19

b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the

doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise

that issue at the appropriate time in state court and has no further means of bringing that issue

before the state courts. In such a situation, the person has bypassed his state remedies and, as

such, is procedurally barred from raising the issue in his federal habeas petition. Procedural

bypass of a constitutional claim in earlier state proceedings forecloses consideration by the

federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of

the state proceedings if the state has procedural rules that bar its courts from considering claims

not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second

appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a

direct appeal or a PCR application and the deadlines for filing have passed, he is barred from

proceeding in state court. If the state courts have applied a procedural bar to a claim because of

an earlier default in the state courts, the federal court honors that bar. As the United States

Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial
> decisions, but also the finality of those decisions, by forcing the defendant to
> litigate all of his claims together, as quickly after trial as the docket will allow,
> and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both

(1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from

the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v.*

20

*Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *Teague v. Lane*, 489 U.S. 288, 297-98 (1989), *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996), and *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome a respondent's contention, it is a petitioner's burden to raise cause and prejudice or actual innocence. If not raised by the petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

### c.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S.

Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. Pursuant to *Martinez v. Ryan*, an error by a prisoner's post-conviction counsel during his initial state collateral review proceeding can qualify as "cause" to excuse the procedural default of a claim of trial counsel ineffectiveness claim if: (1) state law required the prisoner to wait until post-conviction review to raise *Strickland* claims; (2) the prisoner's underlying *Strickland* claim is "substantial"; and (3) the prisoner can establish that his post-conviction counsel was ineffective under the *Strickland* standard. 132 S. Ct. 1309, 1318-19 (2012).

### 3.     Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and prejudice in his ineffective-assistance-of-counsel claim. *Id*.

### III.     Analysis

A.     Procedural Bar

Respondent contends that Petitioner's Ground One is procedurally defaulted because "the claim differs from the claim in the PCR action." ECF No. 27 at 12. Respondent contends that Petitioner's PCR claim was one of "involuntary plea," and points only to PCR counsel's brief closing statement to the PCR court as the basis for this contention. *Id.*[5] Petitioner asserts that he did everything he could to present the substance of his Ground (ineffectiveness of counsel relating to admission of the statement leading to coerced plea) to the PCR court and that both his PCR application and the transcript of the PCR hearing show that the issue was adequately presented to and considered by the PCR court and not procedurally defaulted. ECF No. 31 at 2-3.

As previously noted, "a federal habeas court may consider only those issues which have been 'fairly presented' to the state courts." *Matthews v. Evatt*, 105 F.3d at 911. Although the claims presented in federal court and state court need not be "identical," *see Ramdass v. Angelone*, 187 F.3d 396, 409 (4th Cir. 1999), the petitioner must present the " 'substance' of his federal habeas corpus claim" to the highest state court with authority to consider it. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)). Presenting the "substance" of the claim requires that the claim "'be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be

_____

[5] PCR counsel stated, "This was not a voluntary plea. He was a very young man; he's been frightened. There's issues about statements." App. 366. However, immediately thereafter, the State's PCR counsel framed the relevant "claim" differently, stating: "[O]f course the main issue that we seem to be focused on today was the voluntariness of the statement." *Id*. The State's counsel proceeded to discuss precisely the law-enforcement testimony that Petitioner relies on for his present claim, stating, "You know, sort of vague statements like . . . I'll mention cooperation or . . . I'll see what I can do for you, those kind of statements are not statements that would render a confession involuntary." *Id*.

23

lurking in the woodwork will not turn the trick.'" *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)). "In other words, fair presentation contemplates that 'both the operative facts' and the 'controlling legal principles' must be presented to the state court." *Matthews*, 105 F.3d at 911 (quoting *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992)).

The undersigned has reviewed the entire record in this case, including, but not limited to, Petitioner's PCR application, the transcript of PCR hearing, and Petitioner's pro se brief in his PCR appeal. It is noted that, as he indicates in his Response, Petitioner listed three separate issues in his application, including the alleged involuntary nature of the statement, involuntary guilty plea, and ineffectiveness of counsel. App. 329. At the PCR hearing, Petitioner clearly testified about his belief that plea counsel should have used Lieutenant Swaggard's waiver-hearing testimony about the promises of "leniency or whatever" that he made to Petitioner to move to suppress the statement. App. 345-46, 349. Petitioner also testified that plea counsel's failure to get the statement suppressed caused him to fear that he would be convicted and given a harsher sentence if he went to trial as an adult in General Sessions Court. App. 347-48. Additionally, in his pro se brief in connection with the appeal from the PCR dismissal, Petitioner clearly included the facts relating to and the federal nature of his claims regarding the effectiveness of plea counsel *vis a vis* admission of the statement against him and his subsequent guilty plea in General Sessions Court. ECF No. 27-9 at 3-6, 11-12.

Under the circumstances recounted above, the undersigned disagrees with Respondent's contentions on the topic of procedural default. Petitioner did as much as he possibly could as a pro se litigant to bring his claims of ineffective assistance of counsel and involuntary plea before

the highest court with jurisdiction to decide them. *See Mathews v. Evatt*, 105 F.3d at 911; *see also Gordon v. Braxton*, 780 F.3d 196, 201 (4th Cir. 2015) (petitioner fairly presented his claim to the state court where the "operative facts" were discussed and applicable legal opinions were cited indicating the "federal nature" of the claim); *Boseman v. Bazzle*, 364 F. App'x 796, 803-04 (4th Cir. 2010) (rejecting a procedural-default contention; claim fairly presented to court despite lack of "separate, specific allegation" of ineffective assistance based on certain facts where there was a general "alibi" ground asserted and the petitioner's alibi arguments included the relevant facts); *see also Fullwood v. Lee*, 290 F.3d 663, 676 n.4 (4th Cir. 2002) (claim not defaulted even though "the current emphasis of . . . claim seems to be slightly different [in federal court] than it was in state court."). Thus, the undersigned finds that Petitioner should not be precluded from presenting the merits of his sole Ground in this court simply because his PCR counsel did not explicitly include a reference to ineffective assistance of counsel in his very brief opening statement during the PCR hearing. Petitioner's testimony given after that statement sufficiently placed his contention before the PCR court and the Court of Appeals that plea counsel was ineffective for not challenging the statement as having been induced by improper promises of leniency and thereby coerced Petitioner to enter an involuntary guilty plea. Thus, Respondent's procedural default argument should be rejected, and the undersigned will address the merits of Petitioner's Ground One below.

           B.      Merits Analysis: Ground One

                        1.      Ground One (restated): Plea Counsel was ineffective for failing to challenge the admissibility of Petitioner's statement on the basis that it was coerced by improper promises of leniency and this ineffectiveness rendered the guilty plea involuntary

a.     The Parties' Contentions

Respondent contends that the PCR court's determination that Petitioner failed to prove that plea counsel was ineffective in his representation with respect to the issue of the admissibility of the statement was reasonable. Respondent also contends that Petitioner cannot show that he was prejudiced by plea counsel's failure to argue that the statement was involuntary because it was allegedly induced by promises of leniency from the interrogating officers. ECF No. 27 at 17. Respondent further contends that Petitioner cannot show that his guilty plea was coerced by plea counsel's failure to suppress the statement because the record shows that there was other significant evidence of Petitioner's guilt available for use by the prosecution had the case gone to trial, and Petitioner faced considerably greater prison time had he been convicted at a trial. *Id*. at 18. Petitioner responds that his guilty plea was coerced because he was prejudiced when he was not appointed a different attorney to represent him in General Sessions Court after plea counsel failed to suppress the statement during the waiver hearing and failed in his efforts to keep the case in family court. ECF No. 31 at 1. Petitioner also responds that the guilty plea in his case is distinguishable from the pleas in *Tollet v. Henderson* and *Brady v. United States* because he was a juvenile over whom jurisdiction was waived from family court to General Sessions Court before the guilty plea was entered. *Id*. at 2.

b.     Applicable Law

Applicable federal law from the Fourth Circuit Court of Appeals ("the Fourth Circuit") holds that a statement will be considered "involuntary under the Fifth Amendment only if it is involuntary within the meaning of the Due Process Clause." *United States v. Braxton*, 112 F.3d

26

777, 782-83 (4th Cir. 1997). For a statement to be deemed involuntary under the Due Process Clause, it must be obtained by 1) threats or violence; 2) direct or implied promises; or 3) the exertion of improper influence. *Id*. The voluntariness of a statement is to be determined from the "totality of the circumstances," including the characteristics of the defendant, the setting of the interview, and the details of the interrogation. *See United States v. Wertz*, 625 F.2d 1128, 1134 (4th Cir. 1980). The test of voluntariness is whether the defendant's will has been "overborne" or his "capacity for self-determination critically impaired." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973). However, the Fourth Circuit has held that voluntariness is not "equated with the absolute absence of intimidation," because, if it were, hardly any statement would be characterized as voluntary. *Wertz*, 625 F.2d at 1134.

Insofar as a defendant argues that an inculpatory statement was induced by promises of leniency, it has been held that interrogating law-enforcement officers may properly initiate discussions on the impact of the defendant's cooperation and may indicate that they will make this cooperation known without rendering a subsequently given statement involuntary. *See United States v. Shears*, 762 F.2d 397, 402 (4th Cir. 1985) ("[T]he cases indicate that government agents may validly make some representations to a defendant or may discuss cooperation without rendering the resulting confession involuntary . . . they may promise to make a defendant's cooperation known to the prosecutor . . . .") (footnote omitted) (citing *United States v. Robinson*, 698 F.2d 448, 455 (D.C. Cir. 1983); *United States v. Fera*, 616 F.2d 590, 594 (1st Cir. 1980); *United States v. Curtis*, 562 F.2d 1153, 1154 (9th Cir. 1977); *United States v. Glasgow*, 451 F.2d 557, 558 (9th Cir. 1971)); *see also United States v. Pelton*, 835 F.2d 1067, 1073 (4th Cir. 1987) (officers' statements that they would conduct a full investigation if the

defendant did not cooperate, but that they would testify to his cooperation if he cooperated did not constitute a specific promise of leniency or result in an involuntary confession, despite the defendant's personal interpretation of their statements). "[A] law enforcement officer may properly tell the truth to the accused," and "[g]eneral encouragement to cooperate is far different from specific promises of leniency." *Pelton*, 835 F.2d at 1072-73.

Moreover, where allegations of involuntary guilty pleas are concerned, the United States Supreme Court has held that a guilty plea is constitutionally valid if it "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. at 31). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id*. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). A plea is knowingly and intelligently made if a defendant is "'fully aware of the direct consequences'" of his guilty plea and not induced by threats, misrepresentation, including unfulfilled or unfulfillable promises, or by "'promises that are by their nature improper as having no relationship to the prosecutor's business.'" *Brady v. United States*, 397 U.S. 742, 755 (1970) (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957)). Because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed. *Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977). Therefore, statements made during a guilty plea should be considered conclusive unless a criminal inmate presents reasons why he should be allowed to depart from the truth of his statements. *Crawford*

28

*v. United States*, 519 F.2d 347 (4th Cir. 1975), *overruled on other grounds by United States v. Whitley*, 759 F.2d 327, 350 (4th Cir. 1985); *Edmonds v. Lewis*, 546 F.2d 566, 568 (4th Cir. 1976). It is well settled that a habeas petitioner cannot avoid the consequences of a guilty plea by claiming coercion due to fear of a harsher sentence that could be entered following a guilty plea. *See Brady v. United States,* 397 U.S. at 751 (pleading guilty to avoid a reasonable possibility of receiving a greater sentence does not constitute a coerced plea); *Dunn v. Bush*, No. 2:14-cv-2277-RMG, 2015 WL 1190075 (D.S.C. Mar. 16, 2015); *Smoot v. McCall*, No. 9:13-cv-00214-GRA, 2013 WL 5883395, at *17 (D.S.C. Oct. 30, 2013).

Also, the Fourth Circuit has held that a PCR court's credibility findings are entitled to deference by this court. *Wilson v. Ozmint*, 352 F.3d 847, 858-859 (4th Cir. 2003); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008). The United States Supreme Court has ruled that "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Finally, the Fourth Circuit has also held that district courts should "accord appropriate deference" to the state PCR court's factual findings and that such findings are presumed to be correct and can only be overcome by the presentation of "clear and convincing evidence." *Watkins v. Rubenstein*, 802 F.3d 637, 643 (4th Cir. 2015) (citing 28 U.S.C. § 2254(e)(1) and *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011)).

c.    Discussion

In his Petition and the accompanying memorandum, Petitioner argued that he would not have entered a guilty plea in General Sessions Court had he been provided effective assistance of counsel during the waiver hearing with regard to the issue of the admission of the statement

against him had he proceeded to trial. Liberally construed, his initial pleadings assert that the PCR court made an unreasonable determination that plea counsel was not ineffective in his failure to challenge the statement as being unconstitutionally induced through promises of leniency from his interrogators and that the resulting guilty plea was voluntary. ECF Nos. 1 at 5; 16 at 4.[6] While Petitioner asserted in his Memorandum in support of the Petition that the State's evidence against him other than the statement "was weak," ECF No. 16 at 10, he does not mention either in that Memorandum or in his Response to the Motion for Summary Judgment the fact that PCR counsel testified that the State was prepared to present evidence from law enforcement officials and co-defendants that Petitioner was the person who shot the victim. App. 357. Nor does Petitioner mention plea counsel's PCR testimony acknowledging Lieutenant Swaggard's waiver-hearing testimony, but opining that it did not show that the statement was

---

[6] However, despite Respondent's opposing assertions that the PCR court reasonably found no ineffective assistance of plea counsel and no involuntary plea, Petitioner does not explicitly repeat that argument in his Response to Respondent's Motion for Summary Judgment. In fact, Petitioner does not address the reasonableness of the PCR court's decision anywhere in his three-page Response. Instead, Petitioner puts forward a supplemental argument, contending that the State violated his constitutional rights by not appointing him a different attorney to represent him in General Sessions Court after plea counsel was unsuccessful in suppressing the statement and preventing the family court from waiving jurisdiction to the General Sessions Court. ECF No. 31 at 1 ("Applicant's guilty plea should only be held up if he had been appointed a different attorney after Waiver Hearing."). It appears as if Petitioner is now attempting to assert that plea counsel had a conflict of interest when he continued to represent him in the proceedings in General Sessions Court. While Petitioner included similar assertions in the memorandum he submitted in support of the Petition, ECF No. 16 at 3, the record of case shows that this contention was never made to any of the State courts. As a result, it is not properly before this court and the undersigned will not address that specific contention in this Report. *See Loomis v. Peyton*, 323 F. Supp. 246, 253 (W. D. Va. 1971) (declining to consider contentions of ineffective assistance that were not presented in state court even though other ineffective-assistance claims were considered because they were raised in state court); *see also Cyrus v. Ballard*, No. 1:12-09341, 2015 WL 5474338, at * 6 (S.D.W. Va. Sept. 16, 2015) (finding that district court "was under no obligation to address . . ." a contention made by a habeas petitioner "for the first time in [a] response to [a] motion for summary judgment").

improperly induced. App. 361-62. The PCR court expressly found that plea counsel's testimony was credible while Petitioner's was not, the PCR court was in the best position to hear and observe both Petitioner and plea counsel when they testified at the PCR hearing. Petitioner presents nothing that would require this court to disregard the PCR court's credibility determination.

Having reviewed the record and considered the totality of the circumstances surrounding the taking of the statement, the undersigned finds that the PCR court's determination that plea counsel was not ineffective and that Petitioner's guilty plea was voluntary was entirely reasonable. The State argued correctly at the close of the PCR hearing that Lieutenant Swaggard's offer to tell the prosecutors about Petitioner's cooperation was merely general and not of the quality to find the statement involuntary as induced by a promise. Such assurances from law enforcement are not improper promises of leniency that render resulting statements or confessions involuntary, and, therefore, plea counsel was not ineffective for failing to move to suppress the statement on the basis of its having been improperly induced. *Compare Pelton*, 835 F.2d at 1073 (statement not involuntary where interrogator promised to make cooperation known to prosecutors) *with Williams v. Withrow*, 944 F.2d 284, 289 (6th Cir. 1991) (holding that confession was coerced because police told suspect that if he told the truth about his role in the murder, he would not be charged, but if he did not talk, he would be charged with murder); *see also State v. Rochester*, 391 S.E.2d 244, 247 (S.C. 1990) (statement voluntary where polygraph examiner merely indicated it would be in defendant's best interest to tell the truth); *State v. Peake*, 352 S.E.2d 487, 488 (S.C. 1987) (statement found involuntary where defendant was promised that the State would not seek the death penalty). Moreover, the State correctly argued

that counsel could have requested a hearing on suppression had the matter gone to trial, but could not guarantee suppression. App. 366. Thus, Petitioner cannot show that he was prejudiced by plea counsel's failure to move to suppress the statement as having been improperly induced because he would still be faced with a choice to take his chances on whether the General Sessions Court judge would suppress the statement or whether, in light of other evidence of his guilt, to take the obviously favorable plea deal. As to counsel's advice on the plea, the PCR judge reasonably found in these circumstances that counsel was not deficient. He credited counsel's testimony as credible in light of the record, especially the plea proceedings, which clearly reflect Petitioner had no complaints of counsel, the prosecution or police, and that he was not promised anything other than the reduced charge, a cap of 20 years, and dismissal of other charges. App. 305-06, 373-74. Under these circumstances, Petitioner has not shown that, but for plea counsel's errors, he would not have pleaded guilty. *See Hill v. Lockhart,* 474 U.S. at 58-59.

Furthermore, Petitioner has not shown anything that would overcome the "strong presumption of veracity" carried by his statements at the guilty plea hearing of a voluntary, knowing, and intelligent decision to plead guilty. *See United States v. Morrow*, 914 F.2d 608, 614 (4th Cir. 1990); *Turner v. Warden*, *Livesay Corr. Inst*., No. 6:11-2692-RBH, 2012 WL 3834840, at *9 (July 27, 2012), *report and recommendation adopted*, 2012 WL 3834863 (D.S.C. Sept. 4, 2012). The transcript of the plea hearing shows that the trial court carefully questioned Petitioner and that Petitioner testified that he understood the trial-related rights he was giving up by pleading guilty, that he was satisfied with plea counsel's representation, and that no one had promised him anything or "held out any hope of reward or threatened" him "to get [him] to plead guilty." App. 300-05. Petitioner also told the plea judge that all of his answers had been his

answers, that they were truthful and made of his own free will, and that he was guilty of the manslaughter charge to which he was pleading guilty. App. 306. While Petitioner tried valiantly during his PCR hearing testimony to avoid saying that he lied to the plea judge, as previously noted his credibility was reasonably discounted at that hearing and he has presented no evidence or argument in this case -- much less clear and convincing evidence -- that would require this court to disregard the assurances of voluntariness that he gave during the plea hearing. *See* 28 U.S.C. § 2254 (e)(1); *Blackledge v. Allison*, 431 U.S. at 73-74. Thus, the undersigned finds that the PCR court's rejection of Petitioner's claims of ineffective assistance of counsel and involuntary plea represents a reasonable interpretation of the record facts and is not contrary to established federal law. *See, e.g.*, *Premo v. Moore*, 562 U.S. at 132; *Tollett,* 411 U.S. at 266-67. Accordingly, Respondent's Motion for Summary Judgment should be granted.

IV.    Conclusion

The undersigned has considered Petitioner's Ground for habeas relief and recommends that it be dismissed. It is recommended that Respondent's Motion for Summary Judgment, ECF No. 26, be GRANTED and that the Petition in this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

March 9, 2016                                  Kaymani D. West
Florence, South Carolina                       United States Magistrate Judge

**The parties' attention is directed to the important notice on the following page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).